UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROSALIO O.,[1] <br>     Plaintiff <br> v. <br> KILOLO KIJAKAJI, Acting Commissioner of Social Security, <br>     Defendant. | Case No. 2:22-cv-08679-GJS <br><br> **MEMORANDUM OPINION AND ORDER** |

## I.    PROCEDURAL HISTORY

Plaintiff Rosalio O. ("Plaintiff") filed a complaint seeking review of the decision of the Commissioner of Social Security denying his application for Supplemental Security Income ("SSI"). The parties filed consents to proceed before a United States Magistrate Judge [Dkts. 11 and 12] and motions for summary judgment [Dkts. 18 (Pl. Br.) and 23 (Def. Br.)] addressing disputed issues in the case. The matter is now ready for decision. For the reasons set forth below, the Court finds that this matter should be affirmed.

---

[1] In the interest of privacy, this Order uses only the first name and the first initial of the last name of the non-governmental party.

## II.  ADMINISTRATIVE DECISION UNDER REVIEW

Plaintiff filed an application for SSI on February 14, 2020, alleging disability beginning October 10, 2019.  [Dkt. 17, Administrative Record ("AR") 15, 222-28.] Plaintiff's application was denied at the initial level of review and on reconsideration.  [AR 15, 102-06, 111-15.]  A telephone hearing was held before Administrative Law Judge Gail Reich ("the ALJ") on November 17, 2021.  [AR 15, 61-76.]

On November 26, 2021, the ALJ issued an unfavorable decision applying the five-step sequential evaluation for assessing disability.  [AR 15-27]; *see* 20 C.F.R. § 416.920(b)-(g)(1).  At step one, the ALJ determined that Plaintiff has not engaged in substantial gainful activity since February 14, 2020, the application date.  [AR 17.] At step two, the ALJ determined that Plaintiff has the following severe impairments: bipolar disorder; delusional disorder; paranoid schizophrenia; oppositional defiant disorder; and personality disorder.  [AR 17.]  At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the impairments listed in Appendix I of the Regulations.  [AR 19]; *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1.  The ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, except he is limited to simple, routine and repetitive tasks with only occasional changes in routine, requires concrete instructions, can tolerate occasional interaction with the general public and occasional team work but needs to work primarily by himself, and is precluded from fast-paced work, such as work as a fast food cook.  [AR 21.]  At step four, the ALJ determined that Plaintiff has no past relevant work.  [AR 26.]  At step five, the ALJ determined that Plaintiff was capable of performing other work that exists in significant numbers in the national economy.  [AR 26-27.]  Therefore, the ALJ concluded that Plaintiff has not been under a disability since February 14, 2020, the date the application was filed. [AR 27.]

The Appeals Council denied review of the ALJ's decision on October 4, 2022. [AR 1-6.] This action followed.

Plaintiff raises the following issues challenging the ALJ's findings and determination of non-disability:

1. The ALJ failed to provide specific, clear, and convincing reasons for discounting Plaintiff's allegations of mental dysfunction. [Pl. Br. at 2-13.]

2. The ALJ failed to properly evaluate the opinion of Plaintiff's therapist and the prior administrative medical findings of the State agency medical consultants. [Pl. Br. at 13-21.]

The Commissioner asserts that the ALJ's decision is supported by substantial evidence and should be affirmed. [Def. Br. at 3-17.]

### III.   GOVERNING STANDARD

Under 42 U.S.C. § 405(g), the Court reviews the Commissioner's decision to determine if: (1) the Commissioner's findings are supported by substantial evidence; and (2) the Commissioner used correct legal standards. *See Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1159 (9th Cir. 2008); *Brewes v. Comm'r Soc. Sec. Admin.*, 682 F.3d 1157, 1161 (9th Cir. 2012). "Substantial evidence … is 'more than a mere scintilla' … [i]t means – and only means – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations omitted); *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 522 (9th Cir. 2014) ("[s]ubstantial evidence is more than a mere scintilla but less than a preponderance") (internal quotation marks and citation omitted).

The Court will uphold the Commissioner's decision when "'the evidence is susceptible to more than one rational interpretation.'" *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) (quoting *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir.

1989)). However, the Court may review only the reasons stated by the ALJ in the decision "and may not affirm the ALJ on a ground upon which he did not rely." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists if the error is "inconsequential to the ultimate nondisability determination, or that, despite the error, the agency's path may reasonably be discerned." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (internal quotation marks and citations omitted).

## IV. DISCUSSION

### A. Plaintiff's Subjective Symptom Testimony

Plaintiff contends the ALJ failed to articulate sufficient reasons for rejecting his testimony concerning his mental impairments. [Pl. Br. at 3-13.]

#### 1. Plaintiff's Subjective Complaints

In February 2020, Plaintiff asserted that he was unable to work due to schizophrenia, bipolar disorder, anxiety, and trauma. [AR 239.] In April 2020, Plaintiff completed an adult function report. [AR 245-52.] He reported that he lived in a sober living facility and experienced problems with paranoia, depression, bipolar disorder, and manic episodes. [AR 245.] Plaintiff's activities consisted of spending time with others, speaking with his housemates, watching television, and meeting with his mental health treatment team. [AR 246.] Plaintiff stated that he went outside daily, was able to use public transportation, did not have problems getting along with family, friends or neighbors, was able to get along "well" with authority figures, did not need reminders to take medication, and was able to pay bills and handle money. [AR 247-48, 250-51.] In the same report, however, Plaintiff stated that he did not "go places," did not engage in social activities, and was too anxious to be around others due to his delusional disorder. [AR 249-51.] Plaintiff also reported difficulty completing tasks, concentrating, understanding, following instructions, getting along with others, handling stress and changes in

routine, walking more than a quarter mile before needing to rest, and remembering to maintain personal hygiene.  [AR 247, 250-51.]

About a month later, in May 2020, Plaintiff completed a second adult function report.  [AR 273-80.]  In this report, Plaintiff identified many additional limitations in functioning not previously reported, including difficulty with talking, hearing, listening, memory, focus, energy, motivation/interest, remembering to take medications, and paying bills and handling money.  [AR 273, 278.]  Plaintiff indicated that he used Access transportation but did not use public transportation.  [AR 276.]  Plaintiff also claimed his ability to handle stress was "somewhat good" and his ability to handle changes in routine was "very good."  [AR at 279.]

At his November 2021 hearing, Plaintiff testified that he had been living in a sober living house with ten other people for a year.  [AR 68.]  He described his living situation as "going well."  [AR 68.]  Plaintiff stated that he spent his time watching television and reading books.  [AR 69.]

### 2. Applicable Legal Principles

In evaluating a claimant's subjective symptom testimony, an ALJ must engage in a two-step analysis.  *See Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007); 20 C.F.R. § 416.929.  First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment, which "'could reasonably be expected to produce the pain or other symptoms alleged.'"  *Lingenfelter*, 504 F.3d at 1036 (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)).  Second, if the claimant meets the first step and there is no evidence of malingering, "'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'"  *Lingenfelter*, 504 F.3d at 1036; (quoting *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)).  The ALJ must specifically identify the symptom testimony that is being rejected and the "facts in the record [that] lead to that conclusion."  *Smolen*, 80 F.3d at 1284; *see also* Social Security Ruling ("SSR")

16-3p, Titles II & XVI: Evaluation of Symptoms in Disability Claims, 2017 WL 5180304, *4 (S.S.A. Oct. 25, 2017) (explaining that the ALJ must "evaluate the intensity and persistence of an individual's symptoms such as pain and determine the extent to which an individual's symptoms limit his or her ability to perform work-related activities").  At the same time, the "ALJ is not required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to the Social Security Act."  *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022) (internal quotation marks and citation omitted).

### 3. Analysis

While the ALJ found that Plaintiff's mental impairments could reasonably be expected to cause symptoms, the ALJ discounted Plaintiff's subjective symptom testimony because his statements were internally inconsistent and in conflict with the medical evidence.  [AR 18-19, 22-24.]

#### a) Inconsistent Statements

The ALJ cited inconsistencies in Plaintiff's statements throughout the record.  Significantly, the ALJ found that Plaintiff provided inconsistent statements about his limitations and abilities in his function reports, which were prepared a little more than a month apart.  [AR 23, 245-52, 273-80.]  In rejecting subjective symptom testimony, permissible grounds include internal contradictions in the claimant's statements.  *See Smolen*, 80 F.3d at 1281-82 (explaining that in evaluating symptom testimony an ALJ may consider "prior inconsistent statements concerning the symptoms[] and other testimony by the claimant that appears less than candid").  Plaintiff identified many limitations in his May 2020 function report (*i.e.*, problems with talking, hearing, listening, memory, focus, energy, motivation/interest, remembering to take medications, paying bills and handling money, and using public transportation) that were not mentioned in his April 2020 function report.  [AR at 273, 275, 277-79.]  Plaintiff's complaint that he was too anxious to be around others due to his delusional disorder also conflicted with his admissions that

6

he spent his time talking with his housemates. [AR 246, 250, 277.]

In addition, the ALJ permissibly relied on Plaintiff's inconsistent statements about his use of alcohol and drugs. [AR 18-19, 23]; *see Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002) (finding that the claimant's "lack of candor" regarding her drug and alcohol use supported the ALJ's "negative conclusions" about the claimant's veracity); *Verduzco v. Apfel*, 188 F.3d 1087, 1090 (9th Cir. 1999) (finding inconsistent statements regarding drinking was a clear and convincing reason to reject a claimant's testimony). In November 2019, when Plaintiff began treatment at Los Angeles County Department of Mental Health (BRIDGES, Inc.), Plaintiff stated that he had history of substance abuse but had not used substances for ten years. [AR 23, 351.] However, in April 2020, Plaintiff reported that he had not used substances in two years. [AR 23, 355.] The following year, in May 2021, Plaintiff reported only one-and-a-half years of sobriety. [AR 23, 351.] Plaintiff also denied methamphetamine use but later admitted to using methamphetamines when he was younger. [AR 18, 23, 336.] Plaintiff's "lack of candor" regarding his drug and alcohol use supports the ALJ's negative conclusions about his symptom testimony. *Thomas*, 278 F.3d at 959.

### b) Medical Evidence

The ALJ also found Plaintiff's subjective statements about the limiting effects of his symptoms inconsistent with the objective medical evidence. [AR 19, 23.] *See Burch*, 400 F.3d at 681 (ALJ may consider lack of objective medical evidence to corroborate a claimant's subjective symptoms so long as it is not the only reason for discounting the claimant's testimony); *see* 20 C.F.R. § 416.929(c)(2); SSR 16-3p, 2017 WL 5180304, at *5 ("objective medical evidence is a useful indicator to help make reasonable conclusions about the intensity and persistence of symptoms, including the effects those symptoms may have on the ability to perform work-related activities"). Although Plaintiff asserted significant limitations in functioning in his May 2020 function report not previously identified, such as difficulty talking

7

and hearing, there was no objective or clinical medical evidence to support such additional limitations. [AR 19, 23.] The ALJ also noted that although Plaintiff reported marked changes in functioning suggesting his condition had worsened, there were no reports of any changes in prescribed medications. [AR 23.] Thus, the ALJ's conclusion that the medical record and objective clinical findings (or a lack thereof) were not entirely consistent with Plaintiff's statements concerning his limitations and symptoms was supported by substantial evidence. *See* 20 C.F.R. § 416.929(c)(2); SSR 16-3p, 2017 WL 5180304, *5.

**B. Opinion Evidence**

Plaintiff contends the ALJ improperly rejected the opinion of his psychotherapist and the prior administrative medical findings ("PAMFs") of the State agency medical consultants. [Pl. Br. at 13-21.]

On January 18, 2017, the Social Security Administration published comprehensive revisions to its regulations regarding the evaluation of medical evidence. *See Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844-01 (January 18, 2017) (available at 2017 WL 168819). For applications filed on or after March 27, 2017, an ALJ must consider the "persuasiveness" of all medical opinions and PAMFs of the state agency medical consultants. *See* 20 C.F.R. § 416.920c(b).[2] In determining how "persuasive" the opinion of a medical source or PAMF is, an ALJ must consider the following factors: supportability, consistency, treatment relationship, specialization, and "other factors." 20 C.F.R. § 416.920c(b), (c)(1)-(5).

In all cases, the ALJ must at least "explain how [he] considered" the supportability and consistency factors, as they are "the most important factors." 20

---

[2] The new regulations also provide that the ALJ will not "defer [to] or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or [PAMFs]," including those from a treating medical source. 20 C.F.R. § 416.920c(a).

8

C.F.R. § 416.920c(b)(2).  For supportability, the regulations state:  "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or [PAMFs] will be."  20 C.F.R. § 416.920c(c)(1).  For consistency, the regulations state:  "[t]he more consistent a medical opinion(s) or [PAMFs] is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion[s] or [PAMFs] will be."  20 C.F.R. § 416.920c(c)(2).  The ALJ is required to articulate findings on the remaining factors (relationship with claimant, specialization, and "other") only when "two or more medical opinions or prior administrative medical findings about the same issue" are "not exactly the same," and both are "equally well-supported [and] consistent with the record."  20 C.F.R. § 416.920c(b)(2), (3).  In addition, an ALJ's decision to reject or discredit any medical opinion must be supported by substantial evidence.  *See Woods v. Kijakazi*, 32 F.4th 785, 787 (9th Cir. 2022) (explaining that the new regulations "displace [the] longstanding case law requiring an ALJ to provide 'specific and legitimate' reasons for rejecting an examining doctor's opinion").

    **1. Jennifer Mason, AMFT**

  Plaintiff contends the ALJ improperly rejected the opinion of his psychotherapist, Jennifer Mason, AMFT (Associate Marriage and Family Therapist).  [Pl. Br. at 13-19.]

  In March 2020, Ms. Mason wrote a letter stating that she had been treating Plaintiff since February 2020 and that Plaintiff's bipolar disorder and delusion disorder significantly limited his daily functioning.[3]  [AR 352.]  Plaintiff, who had experienced incarcerations and lived in sober living facilities, demonstrated paranoia, severe anxiety, severely depressed mood, lack of energy, disrupted

---

[3] Ms. Mason's supervisor, Natalia Mathis, LMFT, also signed this letter.  [AR 352.]

9

patterns of sleeping and eating, inability to interact with others, difficulty taking public transportation, and marked difficulties in maintaining concentration and memory. [AR 352.] Ms. Mason reported that "[w]ithin the therapeutic setting … [Plaintiff] cannot concentrate on the task at hand," "gets lost on a tangent" when asked a question, [and] "has exhibited an inability to remember appointments." [AR 352.] Ms. Mason concluded that Plaintiff "has a severe impairment and meets criteria to receive SSI Disability." [AR 352.]

In April 2021, Ms. Mason wrote a letter stating that Plaintiff had been regularly attending therapy sessions, was compliant with his medication regimen, exhibited a level of engagement and a willingness to work on himself outside of psychotherapy when his symptomatology and diagnoses were not disrupting his memory, and was a participatory client of BRIDGES, Inc.[4] [AR 362.]

The ALJ found Ms. Mason's opinion was "minimally persuasive." [AR 25.]

Plaintiff argues that the ALJ erred by failing to articulate sufficient findings on the persuasiveness (*i.e.*, supportability and consistency factors) of Ms. Mason's opinion. [Pl. Br. at 13-19.] However, an ALJ's burden to articulate findings on persuasiveness applies only to medical source opinions and PAMFs. *See* 20 C.F.R. § 416.920c. A "[m]edical source means an individual who is *licensed as a healthcare worker* by a State and working within the scope of practice permitted under State or Federal law, or an individual who is certified by a State as a speech-language pathologist or a school psychologist and acting within the scope of practice permitted under State or Federal law." 20 C.F.R. § 416.902(i) (emphasis added). An ALJ is not required to articulate how "evidence from nonmedical sources" was considered. 20 C.F.R. 404.1520c(d); *see also* 20 C.F.R. § 416.902(j)(3) ("Nonmedical source" means "a source of evidence who is not a medical source and includes "[p]ublic and private social welfare agency personnel").

---

[4] This letter is unsigned. [AR 362.]

10

Here, Ms. Mason was an *associate* marriage and family therapist, which indicates she was not licensed as a healthcare worker. [AR 352, 362]; *see* Cal. Bus. & Prof. Code § 4980.03(b) ("Associate," … means an unlicensed person who has earned a master's or doctoral degree qualifying the person for licensure and is registered with the board as an associate."). Because Ms. Mason did not qualify as a medical source, 20 C.F.R. § 416.902(i), the ALJ had no obligation to articulate findings on the persuasiveness of her opinion, 20 C.F.R. § 416.920c(d).

Nevertheless, even if Ms. Mason's letters could be construed as an opinion from a medical source, the ALJ provided adequate rationale for finding her opinion minimally persuasive. [AR 25.] As to supportability, the ALJ found Ms. Mason's assessment of Plaintiff's limitations in functioning was "largely [] a recitation of [Plaintiff's] own subjective statements regarding his functioning," and did not appear to be supported by "clinical or laboratory records and findings" or symptoms observed by Ms. Mason. [AR 25]; *see Thomas*, 278 F.3d at 957 (holding that when a physician offers an opinion that is "brief, conclusory, and inadequately supported by clinical findings," the ALJ need not accept it). While Plaintiff asserts that Ms. Mason's opinion was supported by some personal observations, the ALJ's finding that Ms. Mason's opinion was based to a large extent on Plaintiff's self-reports is supported by substantial evidence. [Pl. Br. at 17.] Other than Ms. Mason's one-page letters, the record does not appear to contain any treatment records from Ms. Mason, let alone records to support an opinion that Plaintiff had marked limitations in functioning. While Plaintiff may interpret the medical record differently, the ALJ's conclusion was rational and must be upheld. *See Burch*, 400 F.3d at 679.

Plaintiff cites *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017), to argue that it was improper for the ALJ to reject Ms. Mason's opinion for being based on Plaintiff's self-reports, as the opinion concerns mental illness. [Pl. Br. at 17-18.] Plaintiff's reliance on *Buck* is misplaced. In *Buck*, the Ninth Circuit clarified that an ALJ errs when she relies on a claimant's discounted self-reports to reject "objective

measures" of a psychologist's evaluation, such as a clinical interview and mental status examination. *Buck*, 869 F.3d at 1040. Here, unlike in *Buck*, there is no indication that Ms. Mason conducted a clinical interview, mental status evaluation or other objective assessment of Plaintiff. Moreover, *Buck* did not overturn the well-settled rule that "'[a] physician's opinion of disability premised to a large extent upon the claimant's own accounts of his symptoms and limitations may be disregarded where those complaints have been properly discounted'" by the ALJ. *Buck*, 869 F.3d at 1049 (quoting *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999)).

The ALJ provided other valid reasons for giving little weight to Ms. Mason's opinion. As for consistency, the ALJ found that Ms. Mason's opinion was not consistent with the record. [AR 25.] While Ms. Mason reported that Plaintiff was compliant with medication, the ALJ noted that Plaintiff "admitted he would try medication only for a few days before stopping" and began receiving injections (Invega Sustenna) because of his "history of medication non-compliance." [AR 18, 25.] The ALJ also considered the length of Plaintiff's treatment history with Ms. Mason. [AR 24]; *see* 20 C.F.R. § 416.920c(c)(3)(i) ("The length of time a medical source has treated you may help demonstrate whether the medical source has a longitudinal understanding of your impairment(s)."). Ms. Mason had "only a [one] month treatment relationship" with Plaintiff when she assessed marked limitations in functioning in April 2020. [AR 24, 352.] The ALJ also correctly observed that Ms. Mason's opinion that Plaintiff "meets the criteria to receive SSI Disability" concerned an issue reserved to the Defendant. 20 C.F.R. § 416.920b(c)(3)(i) ("[s]tatements that [a claimant is] not disabled, blind, able to work, or able to perform regular or continuing work" are not valuable or persuasive). In sum, substantial evidence supports the ALJ's evaluation of Ms. Mason's opinion.

### 2. PAMFs

Plaintiff contends the ALJ erred in evaluating the PAMFs of the State agency

medical consultants, Dr. Solomon and Dr. Schumacher, regarding Plaintiff's ability to perform work with the public. [Pl. Br. at 19-21.]

In June 2020, Dr. Solomon reviewed the medical records and assessed Plaintiff with moderate impairments in his ability to: understand, remember, and apply information; get along with others; and maintain concentration, persistence, or pace. [AR 82.] Dr. Solomon also found that Plaintiff had moderate limitations in his ability to: remember locations and work-like procedures; understand and remember detailed instructions; carry out detailed instructions; and interact appropriately with the general public. [AR 84.] Dr. Solomon stated that Plaintiff was "capable of NP [non-public] unskilled work." [AR 81.]

In September 2020, Dr. Schumacher reviewed the medical evidence and adopted Dr. Solomon's assessment. [AR 92-96.]

The ALJ found the PAMFs of the State agency medical consultants were persuasive. [AR 24.] In assessing Plaintiff's RFC, the ALJ determined, in part, that Plaintiff could "tolerate occasional interaction with the general public." [AR 21.]

Plaintiff argues that the ALJ erred by disregarding the PAMFs that Plaintiff could perform non-public work. [Pl. Br. at 19-20.] According to Plaintiff, the ALJ "materially departed" from the PAMFs by finding that Plaintiff could occasionally interact with the public. [Pl. Br. at 20.] Contrary to Plaintiff's argument, a finding that Plaintiff is *capable* of non-public work does not necessarily indicate that Plaintiff is *limited* to non-public work. Indeed, the PAMFs expressly provide that Plaintiff was only "moderately limited" in the ability to interact with the general public. [AR 84, 96.] To the extent there was a conflict in the evidence regarding Plaintiff's ability to work with the public, it was for the ALJ to resolve. *See Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) ("The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities.").

///

Plaintiff also asserts that the ALJ failed to properly evaluate the supportability and consistency factors relative to the PAMFs, as required by the new regulations. [Pl. Br. at 20]; *see* 20 C.F.R. § 416.920c(b)(2). However, the ALJ explained that the PAMFs were considered persuasive, as they were supported by and consistent with the overall record. [AR 24.] In particular, the ALJ found that the PAMFs were consistent with the medical expert's opinion, which was based on objective and clinical findings in the medical record, as well as Plaintiff's own hearing testimony. [AR 24-26.] The ALJ also found that the PAMFs were consistent with the updated medical evidence of record. [AR 24.] Thus, the ALJ's persuasiveness determinations with respect to the PAMFs were supported substantial evidence.

## V.  CONCLUSION

For all of the foregoing reasons, **IT IS ORDERED** that the decision of the Commissioner finding Plaintiff not disabled is AFFIRMED.

**IT IS SO ORDERED.**

DATED: August 11, 2023

_____
GAIL J. STANDISH
UNITED STATES MAGISTRATE JUDGE